UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES POHL,<br><br>          Plaintiff,<br><br>v.<br><br>INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, LOCAL 16 PENSION PLAN, et al.,<br><br>          Defendants. | Case No. 24-cv-02120-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 45 |

On December 9, 2024, Plaintiff James Pohl filed the operative complaint against Defendants International Alliance of Theatrical Stage Employees Local 16 Pension Plan ("Pension Plan"), Board of Trustees of IATSE Local 16 Pension Plan Trust Fund ("Board of Trustees"), BeneSys Administrators ("BeneSys"), and IATSE Local 16 ("Union), alleging violations of the Employee Retirement Income Security Act ("ERISA"). (Second Amend. Compl. ("SAC"), Dkt. No. 43.) Pending before the Court is Defendant Union's motion to dismiss. (Union Mot. to Dismiss, Dkt. No. 45.)[1]

The Court previously deemed the matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b), and vacated the February 20, 2025 hearing. (Dkt. No. 54.) Having considered the parties' filings and the relevant legal authorities, the Court GRANTS Defendant Union's motion to dismiss.

## I. BACKGROUND

From 1983 to 1991, Plaintiff was employed in the Union's jurisdiction and was a

---

[1] The remaining Defendants filed their answer on January 7, 2025. (Dkt. No. 47.)

participant in the 1991 Pension Plan. (SAC ¶ 14.) Plaintiff alleges that he was a Non-Collectively Bargained Participant. (FAC ¶ 14.)

In June 2021, Plaintiff spoke with Defendant BeneSys's Pension Coordinator, Sophia Aranda, stating that he was 100% vested. (SAC ¶ 21.) In July 2021, Plaintiff received a Benefit Election Form from Defendant BeneSys, stating that Plaintiff was only 76% vested. (SAC ¶ 22.) Plaintiff asserts this was faulty and based on incorrectly classifying him as a Collectively Bargained Participant. (SAC ¶ 22.)

On September 6, 2021, Plaintiff submitted an appeal. (SAC ¶ 25.) On November 5, 2021, Plan Manager Rachel Mora informed Ms. Aranda that she had spoken to James Beaumonte, who was then the President of Defendant Union and a Trustee of Defendant Pension Plan. (SAC ¶ 33.) Specifically, Ms. Mora stated: "I spoke with Jim and he says the calculation is accurate. . . . [Plaintiff] was never an NB [Non-Collectively Bargained] employee. The Union staff was the only staff that was NB." (SAC ¶ 33, Exh. I.) Ms. Aranda documented Mr. Beaumonte's opinion in Defendant BeneSys's database. (SAC ¶ 33, Exh. J.) Plaintiff alleges that when making this opinion, Mr. Beaumonte was acting in his capacity as the President of Defendant Union rather than a Trustee of Defendant Pension Plan because trustees cannot act independently to interpret the Plan. (SAC ¶ 34.)

On February 28, 2022, Defendant Board of Trustees considered Plaintiff's appeal based on an allegedly inadequate appeal packet prepared by Defendant BeneSys. (SAC ¶¶ 50-52, 54.) Defendant Board of Trustees tabled the appeal pending additional information that would be presented to the Appeals Sub-Committee. (SAC ¶ 52.)

On April 7, 2022, the Appeals Sub-Committee considered and denied Plaintiff's appeal. (SAC ¶¶ 54, 59.) Plaintiff alleges that Defendant Union omitted applicable and relevant collective bargaining agreements ("CBAs") from the packet, crippling his appeal. (SAC ¶ 59.) Only two trustees attended the meeting: Mr. Beaumonte and Lance Hughston II. (SAC ¶ 60.) Plaintiff alleges that Mr. Hughston, who is an Employer Trustee, was improperly appointed as an Employer Trustee because he is both an employer and a member of Defendant Union. (SAC ¶ 69.) Plaintiff further alleges that Mr. Hughston's company provides payroll services in contract with Defendant

1  Union, creating a conflict of interest. (SAC ¶ 70.) Thus, because the LMRA requires that

2  employees and employers are equally represented in the administration of a fund, Plaintiff

3  contends that Defendant Union had unequal control of Defendant Board of Trustees and thus

4  became a fiduciary. (SAC ¶¶ 71, 72.)

5  On April 15, 2022, Plaintiff received a letter stating that his appeal had been denied. (SAC

6  ¶ 75.) On April 6, 2024, Plaintiff filed the instant action. (Compl., Dkt. No. 1.) On July 16, 2024,

7  Defendant Union filed a motion to dismiss the then-operative complaint. (Dkt. No. 22.) On

8  October 31, 2024, the Court granted Defendant Union's motion to dismiss because Plaintiff failed

9  to allege specific acts committed by Defendant Union, but gave Plaintiff leave to amend.

10 (Dismissal Order at 9-10, Dkt. No. 36.)

11 On December 9, 2024, Plaintiff filed the operative complaint, bringing a claim for benefits

12 pursuant to ERISA § 502(a)(1)(B) against Defendant Union. (SAC at 23.) On December 23,

13 2024, Defendant Union filed the instant motion to dismiss. On January 19, 2025, Plaintiff filed

14 his opposition. (Pl.'s Opp'n, Dkt. No. 51.) On January 27, 2025, Defendant Union filed its reply.

15 (Union Reply, Dkt. No. 52.)

## II. LEGAL STANDARD

17 Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based

18 on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule

19 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250

20 F.3d 729, 732 (9th Cir. 2001).

21 In considering such a motion, a court must "accept as true all of the factual allegations

22 contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation

23 omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or

24 there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

25 *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

26 *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation

27 marks omitted).

28 A claim is plausible on its face when a plaintiff "pleads factual content that allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III. DISCUSSION

"As a matter of federal law, a union and its representatives are not agents of a trust fund created by a collective bargaining agreement." *Waggoner v. Dallaire*, 649 F.2d 1362, 1368 (9th Cir. 1981). Rather, "[t]rust authorities . . . have long been held to constitute a distinct and independent entity separate from the union that negotiates the collective bargaining agreement establishing a trust." *Id.*; *see also Operating Eng'rs Pension Tr. v. Cecil Backhoe Serv., Inc.*, 795 F.2d 1501, 1507 (9th Cir. 1986) (same). Thus, "[t]hese trust authorities by law have no authority to direct union activities, and unions are involved with the trust authorities only to the extent of selecting half of the trustees." *Waggoner*, 649 F.2d at 1362. Accordingly, the Court previously dismissed Plaintiff's complaint as to Defendant Trust, explaining: "Defendant Union cannot automatically be held liable for the actions of Defendant Pension Plan or Board of Trustees because they are separate entities. Plaintiff must allege specific acts committed by Defendant

United States District Court
Northern District of California

1   Union itself." (Dismissal Order at 9-10.)

2   Here, Plaintiff argues that Defendant Union is liable as a "*de facto* fiduciary" because he
3   believes Mr. Beaumonte was acting in his capacity as Defendant Union's President when he
4   opined about Plaintiff's bargaining status. (Pl.'s Opp'n at 17.) In *Pegram v. Herdrich*, the
5   Supreme Court recognized that "the trustee under ERISA may wear different hats." 530 U.S. 211,
6   225 (2000). ERISA, however, requires "that the fiduciary with two hats wear only one at a time,
7   and wear the fiduciary hat while making fiduciary decisions." *Id.* "In every case charging breach
8   of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person
9   employed to provide services under a plan adversely affected a plan beneficiary's interest, but
10  whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when
11  taking the action subject to complaint." *Id.* at 226. Thus, the question here is whether Plaintiff
12  has alleged facts demonstrating that Mr. Beaumonte was acting as Defendant Union's President
13  when he opined that Plaintiff's bargaining status.

14  The Court finds he has not. In arguing that Mr. Beaumonte was acting as Defendant
15  Union's President, Plaintiff points to the Plan of Benefits, which states: "Only the Board of
16  Trustees is authorized to interpret the Plan of Benefits described in this booklet. No individual
17  Trustee, union representative or employer representative is authorized to interpret this plan on
18  behalf of the Board or to act as an agent of the Board." (*Id.*) Thus, Plaintiff argues that because
19  Mr. Beaumonte was not permitted as a Trustee to interpret the Plan of Benefits by opining about
20  Plaintiff's bargaining status, he **must** have been acting in his capacity as Defendant Union's
21  President. (*Id.*)

22  This conclusion is not sustainable. Even if Mr. Beaumonte was acting outside the
23  permissible scope of his role as a Trustee, this does not automatically mean he was acting as
24  Defendant Union's President. Indeed, there is nothing to suggest that Mr. Beaumonte would have
25  been able to opine about Plaintiff's bargaining status in his role as Defendant Union's President.
26  This is particularly the case where the complained of action -- interpreting the Plan of Benefits --
27  is a function related to Mr. Beaumonte's Trustee role, rather than the collective bargaining
28  function related to his role as Defendant Union's President. Thus, Mr. Beaumonte's actions are

1   not sufficient to impute liability on Defendant Union.

2         In the alternative, Plaintiff argues that Defendant Union excluded CBAs and side letters from the packet that was presented to Defendant Board of Trustees and the Appeals Subcommittee. (Pl.'s Opp'n at 6-7.) Plaintiff, however, does not allege that Defendant Union prepared this packet; rather, Plaintiff alleges that Defendant *BeneSys* prepared the packet. (SAC ¶ 54.) Plaintiff also fails to cite any authority that suggests Defendant Union would have any responsibility in ensuring the adequacy of a packet prepared for Defendant Board of Trustees. Rather, as the Ninth Circuit has recognized, "unions are involved with the trust authorities only to the extent of selecting half of the trustees." *Waggoner*, 649 F.2d at 1368.

      Finally, Plaintiff argues that Defendant Union was "fully in charge" of the denial of benefits because Mr. Hughston was improperly appointed as an Employer Trustee. (Pl.'s Opp'n at 9.) The LMRA requires that "employers and employees are equally represented by trustees in the administration of the fund." *Quad City Builders Assoc. v. Tri City Bricklayers Union*, 431 F.2d 999, 1003 (8th Cir. 1970). Plaintiff contends that because Mr. Hughston was both a member of Defendant Union and did business with Defendant Union, he had a conflict of interest and should not have been appointed an Employer Trustee. (Pl.'s Opp'n at 10-11.)

      Even if this was the case, however, Plaintiff cites no authority that the failure to satisfy the LMRA's equal representation requirement automatically means that a union is "in charge" of the board of trustees and therefore legally liable for actions taken by the trustees. Rather, assuming Mr. Hughston was improperly appointed as an Employer Trustee, it appears the relief would be to enjoin him from serving as an Employer Trustee, not hold Defendant Union liable for all actions taken by Defendant Board of Trustees during the time of his service. *See Quad City Builders Assoc.*, 431 F.2d at 1004. To find otherwise would be contrary to *Pegram*, which again recognized that individuals wear different hats depending on the function they are performing. 530 U.S. at 226. Here, any decisions made regarding Plaintiff's benefits would still be related to Trustee responsibilities, not the collective bargaining responsibilities related to Defendant Union.

      Accordingly, the Court finds that Plaintiff has not alleged that Defendant Union is a proper party in this action, as Plaintiff has not identified actions taken by Defendant Union or that would

otherwise impute liability on Defendant Union. Ultimately, this action concerns a benefits determination based on the actions taken by the remaining Defendants. The Court thus concludes that further amendment would be futile, particularly as this is Plaintiff's second attempt to allege adequate facts related to Defendant Union. While Plaintiff raises concerns that he may need to obtain discovery from Defendant Union and its officers, Defendant Union does not have to be a party in this case for Plaintiff to obtain such discovery should discovery be permitted outside of the administrative record. Plaintiff, for example, would then have the option of serving a subpoena on a non-party.

### IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Defendant Union's motion to dismiss with prejudice.

IT IS SO ORDERED.

Dated: March 14, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge